GEORGE JANSEN v. THE CITY OF ATCHISON, AND A. G. OTIS.

1. CITIES; POWERS AND DUTIES, *Respecting Bridges, Streets and Sidewalks; Liability for Negligence.* Cities, having the powers ordinarily conferred upon them respecting bridges, streets and sidewalks within their limits, owe to the public the duty of keeping them in a safe condition for use in the usual mode by travelers, and are liable in a civil action for special injuries resulting from neglect to perform this duty. [The previous rulings of this court in sundry cases, in respect to this question, noticed and affirmed.]

2. STARE DECISIS; *Settled Rules Should Not be Overturned.* It is seldom that a rule of law, generally recognized by the decisions of other states, generally approved by jurists, hitherto followed by this court, and apparently salutary in its operation, ought to be abandoned merely because the reasons given for its original adoption are not altogether satisfactory, and that, logically, the courts should have reached an opposite conclusion.

3. DEMURRER TO EVIDENCE; *Province of Court, and Jury; Practice.* Where the court sustains a demurrer to the evidence, this ruling will be reversed when it appears that the petition states facts sufficient to constitute a cause of action, and there is testimony tending fairly to establish every essential fact thereof; and this, notwithstanding a preponderance of the evidence appears to be with the ruling of the court.

4. LIABILITY OF CITY; *Notice of Defect in Sidewalk; Diligence.* To make a city liable for injuries resulting from a defect in a sidewalk, it must appear, either that the city had notice of the defect, or that it was a patent defect and had continued so long that notice might reasonably be inferred, or that the defect was one which with reasonable and proper care should have been ascertained and remedied.

5. LOT-OWNER, *Non-liability for Injury.* Where injury has resulted from a defect in the sidewalk by the city negligently permitted to continue, and for which the city is compelled to pay, there is no recourse over in favor of the city against the owner of the lot in front of which the defect existed, and no liability on the part of such owner to the party injured, arising from the mere fact of ownership.

6. ———— *In Case of Negligence.* Before the lot-owner can be held responsible, there must appear some negligence on his part, or he must have trespassed upon the sidewalk by obstruction upon the surface, or excavation beneath, and such negligence, obstruction or excavation caused the injury.

7. —————— *Area, under Sidewalk; Presumptions.* Where there is an area or open space in front of a building, and beneath the sidewalk, and a wall extending along in front of said area, upon which the sidewalk in part rests, it may be presumed, in the absence of testimony, that this area was for the benefit of the building, and for the purposes of air, light, approach, or storing, and that the same was constructed by the owner, or at his instance; but where it appears from the testimony that this area was not, and could not (without a change in the walls or approaches) be used for any purpose connected with the building, then this presumption ceases, and it must be shown that the work was done by the owner, or at his instance, before he can be held responsible for injuries received by falling through the walk into the area.

8. —————— *Negligence of City.* Where neither statute nor ordinance attempts to cast upon the lot-owner the duty of making or repairing sidewalks, and the only provisions thereon authorize the city to make or repair sidewalks, and collect the cost thereof from the lot-owner *held*, that permitting a defect to remain in the sidewalk may be negligence on the part of the city, but is not on the part of the owner.

### *Error from Atchison District Court.*

ACTION by *Jansen*, to recover damages for personal injuries. His petition alleged that in August 1873, while lawfully, and without any negligence on his part, walking along and over the sidewalk on Commercial street in the city of Atchison, said walk broke through, and precipitated plaintiff into an area under the walk, causing great and permanent injury to his person, etc. Other statements of his petition, the defenses set up by the defendants, and the material facts, sufficiently appear in the opinion, *infra.* Trial at the June Term 1874 of the district court. When the plaintiff rested, the defendants, the *City of Atchison,* and *A. G. Otis,* filed separate demurrers to the evidence. These demurrers were sustained by the court, the jury discharged, and judgment entered in favor of the defendants for costs. *Jansen* brings the case here on error.

*Albert H. Horton,* and *H. C. Solomon,* for plaintiff:

1. The city is liable not only for accidents occasioned by negligently constructing defective sidewalks on its streets, or by

causing such defects in them after they are made, but also for negligently permitting such defects to continue. Laws of 1872, p. 208, §§ 54, 55; Laws of 1873, pp. 128 to 132, §§ 1, 2, 3, 4, 9; 9 Kas. 550; 11 Kas. 124, 127; 2 Dillon on Munic. Corp. 908 to 928, §§ 787 to 796; 40 Mo. 569; 45 Mo. 449; 35 Ill. 58; 30 Conn. 118; 4 Black, 418; 5 Kas. 311; 37. N. Y. 568; 22 Penn. St. 55, 384; 67 Penn. St. 355, 68 Penn. St. 404.

2. The owner of the house and premises, whose duty it was to keep a passage-way or sidewalk in repair, and who allowed it to become and remain in a dangerous condition, is also liable to a person who receives an injury from said neglect. 37 N. Y. 568; 23 Wend. 445; 2 Black, 418.

If defendant Otis, without special authority, made or continued a covered excavation on Commercial street, or on the sidewalk thereof, for a private purpose, he is responsible for all injuries resulting from the way being thereby less safe. 18 N. Y. 79; Dillon Munic. Corp. 925.

*D. Martin,* for the city of Atchison:

1. We contend, that the control and care which a city of the second class in this state exercises over the streets and sidewalks of the city, are by virtue of a power of a governmental character, and that it is not liable to the private action of an individual for neglecting to exercise such power, or for its imperfect execution, and therefore that the city cannot be liable in this action. We are aware that in one case this court has seemingly overlooked, and in another apparently discountenanced, this doctrine. In *Topeka v. Tuttle,* 5 Kas. 311, which was a case of neglect to repair a street, it would seem that the general question of municipal liability or immunity in such cases was not argued by counsel. It was contended that the petition was insufficient, but the court say, "Why it is not sufficient we are not informed." It is then intimated that the court think the petition sufficient. On the motion for rehearing, 5 Kas. 425, the argument seems to be wholly upon other questions. The case of *Atchison v. King,* 9 Kas.

550, was submitted on brief; and although the point was raised by the city, still there was but little argument further than a mere statement of the proposition and a citation of authorities. The court decides that the instruction asked by the city which raised the question, lacked one essential element, saying "if the city carelessly and negligently permitted the defect to exist, no matter how caused, after notice thereof to the city, or for so long a time that notice was presumable, then it became liable." The court does not discuss the point, nor refer to any authorities on either side. Now, inasmuch as no rule of property is involved, but only the construction of powers granted by statute, and liabilities incurred by reason thereof, we think the doctrine of *stare decisis* should not in this case outweigh reason, and that this court ought to examine the question fully on principle, and decide it in accordance with sound reason. (1 Kent's Com. 477.) We do not wish to be understood as undervaluing precedent. We claim indeed to stand on this question *super antiquas vias.* For the doctrine of common-law municipal responsibility to private individuals for damages caused by defective highways, we consider a modern heresy, now bolstered up it is true by a respectable array of authorities, but none the less a heresy on that account. From the time that the Romans are said to have established the four great highways through the length and breadth of Britannia, down to the present, we know of no British authority from which the doctrine of such responsibility can be legitimately drawn. And we might search in vain for such a doctrine in that system of jurisprudence which once ruled the civilized world, and the principles of which are even now so prevalent in Europe, some of them even being engrafted upon the common law. Yet the civil law was very careful of the persons and possessions of individuals, and even more rigorous than the common law for acts of negligence. The inhabitant of a house was responsible for all damages caused by throwing anything out of it by which one was injured, even though by a stranger in the absence of the proprietor; and was finable for hanging anything from

24—16 KAS.

the house into the street whereby one might be injured; yet
the public could not be required to respond in damages to
individuals on account of defective streets. (Domat's Civ. Law,
part 1, book 2, title 8, § 1.) These principles obtained also in
France. Persons placing obstructions in streets or highways,
or committing other trespasses therein, were subject to fine,
and also liable to indemnify any person injured thereby; but
it does not seem that the public ever assumed the burden of
making pecuniary satisfaction for injuries to individuals. In
England the public roads and streets were called in the old
books *via regia*, and they are still designated as the king's
highways. The reparation of these was one of the *trinoda
necessitas* to which every man's estate was subject, the duty
being placed side by side with the building of castles, and the
repelling of invasions. (1 Bl. Com. 357, 262; 2 Bl. Com.
102.) The reparation of the king's highways was a public
duty devolving upon the subject, just as the contribution to
the erection of fortresses and serving in the king's armies
in time of war were public duties. The subject was pun-
ishable for failure to perform these duties when legally
called upon. In order to apportion the burden of repair-
ing the highways it was found convenient to require the
inhabitants of each parish to repair the highways within
its limits, and the parish was indictable for failure to do
so. The inhabitants were amenable to the king, just as
they would be for failure to contribute to the erection of
fortresses, or to take up arms against the hostile invader.
But as the king could not be called to account by a subject
for a failure to protect him against the invader, so neither the
king nor the parish was liable to an individual for the non-
repair of highways. The want of power in the courts to
enforce any decree against the king, is not the only reason
for his immunity from legal process. A remedy presupposes
a wrong; but "The king can do no wrong." The American-
ization of this axiom is this: Acts of the government are but
emanations of the public will; and as this is the highest
human authority recognized by republics, such acts are, ac-

cording to the theory of our government, right, and must be so accepted by all people within its jurisdiction. In the performance of governmental duties, therefore, the sovereign power is not amenable to individuals.

Our road laws generally pursue the analogies furnished by the mother country. In this state, highways are laid out by legislative authority, and the sovereign power of eminent domain is freely exercised. The whole state, not excepting cities of the second class, is laid off into road districts, each having an overseer whose duties are prescribed by the laws of the state. Ample powers are conferred upon these overseers; and able-bodied male persons are required to work on the roads and streets, or pay a commutation fee, and a county tax may also be levied for road purposes. (Gen. Stat. 902, 906.) Our statute is very similar to 13 George III, c. 78. But we have no statute fixing a liability upon counties, townships or road districts, in favor of private individuals for injuries caused by defective highways, and we think it well settled that there is no common-law liability. 2 Term R. 667; 9 Mass. 247; 4 Cush. 310; 2 N. H. 392; 17 How. 161, 167; 17 Ill. 143; 3 Harrison, 108; 2 Vroom, 507; Cooley on Const. Lim. 247; Dillon on Munic. Corp., §§ 762, 785.

We think there is no foundation in reason for the distinction asserted in some late cases between cities clothed with authority to repair highways on the one hand, and counties and townships possessing like authority on the other, holding the former liable to such actions while the latter are not. It is somewhat surprising that a doctrine, asserted for the first time to be "common law" only thirty years ago, upon reasons which have been and must continue to be distinctly repudiated by our most enlightened jurists, should still be accepted as the undoubted law of the land. The courts of New York are responsible for the heresy. It is on their authority that all other similar decisions are based, whether in the federal or the state courts. And these New York authorities were so ably reviewed, and the fallacy of the doctrine and the inconsistency of the cases so thoroughly exposed in the brief

of Hon. J. P. Whittemore in the case of *Detroit v. Blakeby*, 21 Mich. 87–100, that we desire to refer to that brief as a part of our brief in this case, making some additional observations. The first distinct enunciation of the *rationale* of the doctrine was made by Selden, J., in the case of *Weet v. Brockport*, 16 N. Y. 161. Referring to municipal charters, (page 171,) he says:

"But it is well known that such charters are never imposed upon municipal bodies, except at their urgent request. While they may be governmental measures in theory, they are in fact regarded as privileges of great value, and the franchises they confer are usually sought for with much earnestness before granted. The surrender by the government to the municipality of a portion of its sovereign power, if accepted by the latter, may with propriety be considered as affording ample consideration for an implied undertaking on the part of the corporation to perform with fidelity the duties which the charter imposes." * * * "It follows from the preceding reasoning that if we regard the injury to the plaintiff as the result of mere neglect to keep the highways of the village in repair, the defendants would be responsible in this action for such neglect upon the ground that their acceptance of the franchise granted by their charter raised an implied undertaking or contract on their part to perform that duty, which, upon the principles referred to, inures to the benefit of every individual interested in such performance."

The decision of the case was placed on other grounds; and yet these *dicta* of Justice Selden form the basis for all subsequent decisions holding municipal corporations liable in such cases for mere non-feasance. Mr. Justice Cooley quotes them as authority in his dissenting opinion in *Detroit v. Blakeby*, and lays them down as law in his valuable work on Constitutional Limitations, 247, 248; and their doctrine has even been countenanced by the supreme court of the United States. (1 Black, 39, 50.) Let us examine this reasoning. It is asserted that "such charters are never imposed upon municipal bodies except at their urgent request." We do not know whether this general statement of fact was true or untrue in New York when Justice Selden wrote his opinion. Its truth or falsity is not apparent from the report of the case, and we

presume it was not in the record. Neither do we think it such a matter of public history as the courts will take judicial notice of without proof. Justice Selden then says, that while municipal charters "may be governmental measures in theory, they are, in fact, regarded as privileges of great value, and the franchises they confer are usually sought for with much earnestness before they are granted." The foregoing remarks apply also to this assertion. But granting it to be true, we submit whether it is not an immaterial statement of fact. Are petitioners to the legislature affected differently from other citizens by the enactment of a statute embodying the recommendations set forth in their petition? Is even a member of the legislature who introduces a bill and secures its enactment, peculiarly bound by its provisions? We think these questions must be answered in the negative. These assertions of Justice Selden are made, apparently, as an inducement to the following legal propositions, viz.:

"The surrender by the government to the municipality of a portion of its sovereign power, if accepted by the latter may with propriety be considered as affording ample consideration for an implied undertaking on the part of the corporation to perform with fidelity the duties which the charter imposes." And the defendants, the trustees of the village of Brockport, would be responsible for neglect to keep the streets in repair "upon the ground that their acceptance of the franchise granted by their charter raised an implied undertaking or contract on their part to perform that duty, which inures to the benefit of every individual interested in such performance."

Now, granting for the sake of deference to the learned and able judge who wrote the opinion, that this language had some meaning in the state of New York when written, let us see if it has any force in Kansas. Is "the surrender by the government to the municipality of a portion of its sovereign power" a possibility in Kansas? We think not. (Const., Art. 12, §§ 1, 5.) The legislative power over cities is as plenary as it is over counties, townships and school districts. Each of these organizations is invested

with certain powers which may be modified or entirely taken away at the will of the legislature, which surrenders nothing. The next step toward liability, according to Judge Selden's opinion, is, acceptance of the charter by the municipality. This is another impossibility here; for acceptance implies and presupposes the power to reject. And we know that a city having a population exceeding two thousand has no more power to reject the act to incorporate cities of the second class, than a county, township or school district has to reject the several laws enacted for its government. The next proposition in the opinion is, that such surrender, if accepted, "may with propriety be considered as *affording ample consideration for an implied undertaking* on the part of the corporation, to perform with fidelity the duties which the charter imposes," and the conclusion is then drawn that such surrender and such acceptance by the trustees, *actually* "*raised an implied undertaking or contract* on their part to perform" the duty of repairing the streets, which contract "inures to the benefit of every individual interested" in its performance. The opinion represents the state as farming out its sovereign powers for a consideration. And what is the consideration? If it be the "surrender," then such "surrender" is both the consideration and subject-matter of the contract. The state not being originally liable to individuals on account of injuries from defective streets, it had no immunity to gain by a "surrender" of its powers to subordinate organizations. Immunity from being called to account by the citizen or subject for the mode of exercising governmental functions, is one of the essential attributes of sovereignty. Unincorporated communities are exempt from liability to individuals for neglect to repair highways. But it is one of the queer results of the strange reasoning of Justice Selden, that if sovereign powers be imparted to such communities by the state, then such communities become *ipso facto* liable to account to every person in the world for the mode of exercising those powers, and if authority to repair highways be conferred, then such communities are bound, as

by a covenant obligation, to a perfect execution of such authority.

In our state, the conferring of corporate powers upon communities cannot be regarded in the light of a contract between the municipality and the state, because—1st, There is but one party—the state; the municipality being the mere creature of the legislative act, which at once creates it a legal entity, confers its powers upon it, and fixes its liabilities. 2d, There is no consideration moving from the community to the state, nor from the state to the community, except the general welfare, which we must presume to be the motive for all legislation. 3d, The community does not assent to the act of the legislature, for it has no power to dissent from it. 4th, There is no subject-matter of contract. The legislature cannot, under our constitution, barter away its powers; and the communities have nothing which they can confer upon the legislature or the state government, except by the united action of all the people in the forms prescribed by the constitution. Indeed, the distinction between public and private corporations, in respect to the nature of their charters, was recognized in the *Dartmouth College Case*, and it may be considered as a well-settled principle of American jurisprudence, that public municipal charters are not to be regarded as contracts. (Dillon on Munic. Corp., § 30.) If then, such a charter is not a contract between the municipality and the state, how can it either *be* a contract or *raise* a contract, express or implied, between the municipality and every person in the world who may happen to travel upon its streets? It will not be contended that there is any such express contract. How is an implied one "raised?" An implied contract, as well as an express one, must have competent parties, a consideration, assent of the parties, and a subject-matter. The illustrations given by Sir William Blackstone show that all these requisites are necessary. (2 Bl. Com. 443.) Now, as between the individual and the municipality, what is the consideration? how and when is the assent given? and what is the subject-matter of the contract? We cannot imagine. When it is

admitted that a charter is not a contract between the munici-
pality and the state, the theory of an implied contract with
the individual falls to the ground.   The only English author-
ities quoted as sustaining the doctrine of municipal liability
to individuals in such cases are based wholly upon the idea
of a contract between the municipality and the crown. *The
Mayor of Lynn v. Turner,* Cowp. 86; *Henley v. The Mayor
and Burgesses of Lyme Regis,* 5 Bing. 91; S. C., 3 Barn. &
Adolph. 77, and 1 Bing. N. C. 222.   The mode of consti-
tuting our municipal corporations, and their powers, privi-
leges and relations to the government, when constituted, are
so dissimilar from those of England existing by royal grant,
that adjudged cases as to the liabilities of such corporations
in England are not of much value as precedents here. (Dillon
on Munic. Corp., chapter 3; 36 N. H. 284.)   The case of
*Lynn v. Turner,* supra, in the King's Bench, was upon the
pleadings.   The action against the corporation was for not
repairing and cleansing a certain creek into which the tide
of the sea was accustomed to flow and reflow, as from *time
immemorial they had been used,* whereby the sea was prevented
from flowing therein, so that said creek was rendered unnavi-
gable, and the plaintiff was obliged to carry his corn round
about.   It was urged by Mr. Baldwin for the corporation,
that the declaration showed the *locus in quo* to be a navigable
river, and therefore in the nature of a highway, common to
all, and that no private action would lie.   But Lord Mans-
field said, "*Ex facto oritur jus.*   How does it appear that this
is a navigable river?   The flowing and reflowing of the tide
does not make it so; for there are many places into which
the tide flows that are not navigable rivers; and the place in
question may be a creek in their own private estate."   Mr.
Baldwin answered: "Then it was incumbent on the plaintiff
to show a special reason or tenure why the corporation ought
to repair, for they are not bound of common right"—citing
authorities.   Lord Mansfield did not dispute this proposition,
but only rejoined: "It is here alleged that the corporation
have from time immemorial been used to repair.   It states,

therefore, that they are bound by prescription, and it might be the very condition and terms of their creation or charter." The judgment was therefore affirmed. It will be observed that the court decided only two points: 1st, That it did not appear from the declaration that the creek was a navigable river or highway; that it might "be a creek in their own private estate." 2d, That an allegation of immemorial usage to repair, was equivalent to an averment that the corporation was bound by prescription to repair, which "might be the very condition and terms of their creation or charter."

In *Henley v. Lyme Regis*, supra, which was for damages to real estate on account of the non-repair of a certain pier and sea-wall, it appeared that the charter granted by Charles I not only pardoned, remised, and released to the mayor and burgesses, and their successors forever, 27 marks of the 32 marks anciently due, and gave them the proceeds of certain fines and amerciaments, but the king then granted "full power and authority and license from time to time, forever, to dig stones and rocks in any place whatsoever, within the borough and parish of the town aforesaid, out of the sea and on the sea shore, in the borough and parish aforesaid, adjoining to the said borough or town, for the reparation and amendment of the port and building aforesaid, called the pier, quay or cob, and other necessary reparations and common works of the same town and borough," and the king therein willed that the mayor and burgesses and their successors should at their own costs and charges thenceforth forever repair, support and maintain the same as often as it should be necessary. And the mayor and burgesses having accepted this charter, it was held that they were legally bound to make such repairs, and that an action might be maintained for a direct and particular damage sustained by an individual in consequence of neglect to make the necessary repairs. We can see no difficulty in calling this transaction a contract or covenant between the crown and the mayor and burgesses. The transaction was of the same nature as that between George III and the Trustees of Dartmouth College. There

were competent parties, a consideration, a subject-matter, and assent of the parties. These constitute a contract. The only real point of difficulty in the case was, whether the contract so inured to the benefit of *individuals* that they might maintain their actions for special damages sustained by them.

We think it quite plain that Justice Selden's theory of municipal liability, in this country is not sustained by these cases, nor by reason. Judge Dillon very justly characterizes it as "purely ideal." (Dillon on Munic. Corp., § 765.) And thereupon Judge Dillon advocates a theory of his own which is certainly very indefinite and unsatisfactory, if not also "purely ideal." He says:

"This liability on the part of municipal corporations springs, as we think, from the particular *nature of the duty* enjoined, which must relate to the local or special interests of the municipality, and be imperative and not discretionary or judicial, and from the *means given* for its performance, which must be ample, or such as were considered to be so by the legislature."

What are the local or special interests referred to? Are not all the interests named in and regulated by the act incorporating cities of the second class, of some local and special importance to such cities? Let us refer to some of them: Such cities are "authorized and empowered to enact ordinances:" 1st, For opening and improving streets, avenues, and alleys, making sidewalks, and building bridges, culverts and sewers. (Laws 1873, p. 128.) These have a local and a general importance. Every person in the world is free to use the improvements, although persons living in the vicinity are chiefly benefited by them. 2d, For imposing a license tax on auctioneers, etc. (Laws 1872, p. 206, § 47.) This is more especially a "local and special" interest. 3d, For restraining and prohibiting riots, assaults, disturbances, indecent shows, the discharge of firearms, etc. (Laws 1872, p. 207, § 50.) This is partly of local and partly of general interest. 4th, For regulating and prohibiting the running at large of cattle, hogs, etc. (Laws 1872, p. 207, § 51.) This might be termed a "local and special" interest. 5th, For procuring fire

apparatus, organizing fire companies, etc. (Laws 1872, p. 208, § 53.) This might be termed a local interest. Other powers might be mentioned, but these are sufficient for illustration. Now which of these five classes of powers or duties are "imperative," and which "discretionary, or judicial?" They are each and all conferred apparently as *legislative powers.* They are nowhere referred to in the statute as *duties.* There is nothing to indicate that the first is more "imperative," or less "discretionary or judicial," than any of the other four. And it would seem that the power to repair sidewalks is not even therein expressly granted, but only impliedly conferred by the authority given to make sidewalks and to levy assessments for "making and repairing sidewalks." (Laws of 1873, p. 128.)

There is abundant authority for saying that in the absence of statute no action lies at the suit of an individual for the negligent or improper exercise of any of the four classes of powers last named. 3 Pet. 398, 409; Dillon on Munic. Corp., § 755; 13 B. Mon. 559; 12 Ohio St. 375; 98 Mass. 221; 1 Allen, 172; 1 Sandf. 465; 11 N. Y. 396; 104 Mass. 87; 19 Ohio St. 19; 33 Wis. 314.

As to the power to make sidewalks, (one of the first class of powers,) this court has decided that its exercise is discretionary. 9 Kas. 155, 161; 11 Kas. 384, 392. By what process of reasoning is it determined, that while the language of the charter authorizing the city to make sidewalks and to levy assessments for making and repairing the same, confers a *discretionary power* to make, it imposes an *imperative duty* to repair? It certainly requires the exercise of judgment and discretion to determine when and how repairs should be made, or whether they should be made at all. This court has decided that after a city has constructed a sewer or drain for the purpose of carrying off surface-water, it may, in its discretion, wholly abandon or discontinue the same, and never make any further use of it. (9 Kas. 603.) Why may it not for a sufficient reason abandon a sidewalk? And who shall determine the sufficiency of the reason — the city council, or the courts?

We are not aware that the courts have ever assumed jurisdiction of such affairs.

We have now examined the question of liability as arising from "the particular nature of the duty enjoined." But Judge Dillon thinks there is another element essential to liability. The *means given* for the performance of the duty "must be ample, or such as were considered to be so · by the legislature." We know of no instance wherein the legislature has stated that it considered the means given ample to the exercise of any power, or the performance of any duty. How shall the point be determined? Is it a legislative, or a judicial question? Shall it be settled by the legislature, the city council, or the courts? If by the courts, then is it a question of law for the court, or a question of fact for the jury? A city of the second class cannot, under the present law, keep any fund on hand, nor incur any general indebtedness, for repairing sidewalks. It may, after notice in some cases and without notice in others, cause sidewalks to be repaired, and levy assessments upon the abutting lots to pay for the same. (Laws of 1873, p. 130.) But suppose no contractor will make the repairs and wait for his pay until the assessments can be collected: must the city appropriate · money from other funds, or borrow it for the purpose? And in case the city have no surplus funds, and no credit, what then? We are not aware that the defenses suggested by these questions have ever been made in any court, but we submit whether they would not be good upon the theory of amplitude of means being an element necessary to liability. Such defenses would certainly be very troublesome. On the whole, Judge Dillon's theory of municipal liability in such cases seems to be "purely ideal," if indeed it does not resolve itself into the theory of Justice Selden.

There is still another theory of municipal liability in such cases, the only remaining one that has come to our notice. It was advanced by Nelson, C. J., in *The Mayor, &c., of New York v. Furze*, 3 Hill, 612. The doctrine is laid down, that the legislative grant to a municipality of *power* to do an act

is equivalent to the injunction of a *duty* to perform it, and is based upon the rule of construction, which sometimes gives to the word "may" the force and effect of "must." This doctrine has since been repeatedly disapproved in such cases in New York. (1 Denio, 600; 32 N. Y. 489, 499.) The word "may" is not used in the grant of power to cities of the second class; the words are, "authorized and empowered." And we have before seen that the authority to repair sidewalks is only impliedly granted. But even if the power to repair had been conferred by the use of the word "may," we think it would not affect the matter, for we know of no instance in which the rule of construction in question has been applied to legislative grants of power to any of the subdivisions of the state. If the grant of *power* is equivalent to the injunction of a *duty*, and the injunction of a duty binds the municipality as by a *covenant* to perform that duty, and if every individual interested in the performance of the duty may maintain an action for the *breach* of the covenant, then we have indeed by judicial construction made a contract between the municipality and every person in the world, and this only by a grant of legislative power! We think the distinction between the mere grant of power and the injunction of duty to perform, is well taken, and is in consonance with sound reason. *Cole v. Medina*, 27 Barb. 218; *Peck v. Batavia*, 32 Barb. 634, 644. Those were stronger cases against the municipality than is the case at bar, and yet it was held that there could be no recovery. Upon the theory advanced in *Mayor, &c., v. Furze*, the municipality would be liable for negligent or imperfect execution of any of the powers enumerated in the five classes heretofore referred to, saying nothing of others granted or to be granted. We have now examined all the theories within our knowledge upon which the doctrine of a common-law liability in such cases has been said to rest. We do not regard any of these theories to be the "perfection of reason," and we cannot therefore accept any of them as law.

An effort is made in this case to charge the city with lia-

bility because the mayor and council enacted certain ordinances relating to the duties of the road overseer, the repairing of sidewalks, etc. We had supposed that if there was any liability on the part of the city it arose either upon the construction and interpretation of certain statutes of the state, or from some principle of the common law; but it is hard to treat with seriousness the notion that the rights or liabilities of the city are to be tried upon the basis of the general ordinances of the city. If the mayor and council can, by general legislation, charge the city with liabilities unknown to the common law or the statutes of the state, we see no good reason why they may not in like manner invest the city with rights before unknown. When legal processes shall bring about these results, we may expect such a revolution in the mechanical forces that a man may lift himself by his boot-straps. It is often difficult to find authorities directly in point on questions involving legal absurdities; but we think the following are sufficient in this instance: *Vandyke v. City of Cincinnati*, 1 Disney, 532; Dillon on Munic. Corp., § 251.

2. If in certain cases an action may be maintained against a city of the second class for injuries caused by neglect to repair sidewalks, we submit that this is not one of such cases. We think it safe to say from the plaintiff's own evidence, that neither he nor the city authorities knew of any defect in this area covering, rendering the same either dangerous or unsafe. If he had supposed so, ordinary prudence would have required him to use the rear entrance mentioned in his testimony. Besides, he testifies substantially that there was nothing upon its surface indicating that it was defective, and that he supposed it safe. And the witnesses are all agreed on this point. His talk with the street commissioner could not therefore, have charged the city with notice that it was dangerous and unsafe. The utmost that could have been conveyed by that conversation was, that the boards were rather old, though not rotten, and the sidewalk somewhat rough. Although the plaintiff had been an occupant of the premises for eighteen

months, he did not know that any of the sills or joists were defective, and yet it was the breaking or displacement of one of them that caused the accident. He did not know what broke, but two other witnesses did know. And their testimony on that point is corroborated.

It is a well-established principle that cities are not liable for defective streets or sidewalks unless they have actual notice of the defect that caused the injury, or unless the defect is of such a nature or has existed for so long a time that notice on its part must be presumed. Shear. & Redf. on Neg. §§ 148, 407; Dillon on Munic. Corp., § 790; 24 Wis. 549; 15 Mich. 307; 9 N. Y. 456; 36 Barb. 226; 5 Duer, 674. In the case at bar the defect was latent, and therefore actual notice must be brought home to the city, or it cannot in any event be made liable. The only circumstances even remotely tending to show notice to the city was the conversation between the plaintiff and the street commissioner. But as the plaintiff and all the other occupants of the house who were witnesses, testified that they considered the covering of the area *safe*, even up to the moment of the accident, we do not see how that conversation could have charged the city with notice that it was *dangerous*.

3. There is still another phase to this case. If the plaintiff is entitled to recover, should such recovery be against the city, or Mr. Otis, or both the city and Mr. Otis? The accident could not have occurred had not the basement-way been constructed under the street by Mr. Otis for his own benefit and the convenience of his tenants. It was his duty to see that the part of the street or sidewalk occupied by the basement-way or area was made and kept as safe as if such basement-way or area had not been built. This area and covering were constructed with reference to the building. The joists were supported in the masonry of the building and area. If either of the defendants is liable, we think it should be the landord, for whose benefit the basement-way or area was made. Dillon on Munic. Corp., § 794; 2 Black, 418, 424; 4

Wall. 657; 18 N. Y. 79, 84; 9 Allen, 17; 23 Pick. 24, 32; 10 Gray, 496.

*Aaron S. Everest*, for defendant Otis:

It is admitted that Otis was the owner of the lot in front of which the defective sidewalk was constructed. But the undisputed evidence is, that the premises were demised and leased to Mrs. T. R. Jansen, step-mother of the plaintiff, and had been so leased to and occupied by her since the 1st of October 1870; that by the terms of said lease said tenant was to keep said premises in good repair during said lease at her own expense; that the plaintiff had full knowledge of the terms of said lease, and executed the same on the part of Mrs. Jansen, as her agent; that she received said demised premises in good order and condition; that said premises at the time of the injury were in her possession, occupancy and under her control. The evidence of the plaintiff shows that the premises were occupied for hotel purposes by Mrs. Jansen, and that he was clerking for her, and engaged in his business as such clerk waiting on a guest at said hotel at the time of the alleged injury; that the sidewalk was apparently safe at the place of the alleged injury; that said plaintiff was familiar with said premises, and had been clerking there, and in the occupation thereof since February 1872, and was the general business manager of Mrs. Jansen, and that he considered the covering of the area wall safe to travel upon.

1. Was there any legal liability, or bounden duty on the part of Otis, by reason of being the owner of the premises to repair, and maintain the sidewalk in question? And if by any contingency it can possibly be held that such was his duty, was it such without his first being notified by the proper city authorities to make such repairs? We contend that there is no liability or duty imposed upon the lot-owner by the statute in such cases. Ordinance No. 69, in force at the time of injury, did not contemplate any notice to the lot-owner, or impose any duty upon him whatever in reference to the con-

struction and repair of sidewalks, but clearly, in connection with the other ordinances, imposed such duties upon the city, which duties were also imposed on it by the general laws incorporating cities of the second class. The city was empowered to make and repair sidewalks, and impose taxes therefor upon the abutting lot-owner. It was not a matter of discretion with the city authorities to exercise or not to exercise the corporate duties imposed by law. The language of the act, though permissive in form, is in fact peremptory. Giving the city authority and power to act, was in effect requiring it to act. The power was given, not for the benefit of the city, but of the public; and the public interest, and individual rights, called for its exercise. 4 Wallace, 446; 61 Ill. 160; 42 Ill. 507; 17 Ill. 145; 25 Ill. 437; 16 N. Y. 159; 60 Barb. 378; 3 Hill, 612.

2. Is said Otis as landlord and owner of said premises liable to his said tenant, her guests or employés, for injuries occurring through the *latent* defect in the sidewalk abutting upon the same, when, as in the case here, there is no proof that he ever constructed said walk, or who constructed the same — whether said tenant, or said city, or said Otis? Certainly not. The *city* would not be liable in such a case. For in case of an open and apparent defect the city is not liable without actual notice, or without the defect has so long existed that notice is to be presumed; and no notice can be presumed of a latent defect. The city is not an insurer against accidents upon streets and sidewalks, nor is every defect therein, though it may cause injury, actionable. It is sufficient if the sidewalks in a city are in a reasonably safe condition for travel. Sher. & Red. Neg., §§ 398, 407; 39 Vt. 255; 35 N. H. 74; 33 Iowa, 397; Dillon on Munic. Corp., § 790; 4 Wallace, 195. See, as to latent defects, 2 Duvall, (Ky.) 576. Now if the city is not liable under the case stated, we certainly contend that the case is much stronger in favor of defendant Otis, for he is under no statutory obligations to the public to either construct or repair sidewalks, and

25 — 16 KAS.

certainly cannot be liable for a latent defect, such as the evidence shows caused the injury to plaintiff in the case at bar.

3. Was Otis in any way liable for said injury, when said premises were in the possession and under the *entire* control of said tenant, who received the same in good condition, and covenanted by the terms of the lease to keep the same in good condition and repair at the said tenant's expense? And is he liable to an employé of said tenant who used and occupied said premises, as the business manager of said tenant, having full knowledge of the terms and conditions of said lease? On this we say the law is well settled, that neither the tenant nor the plaintiff in her employ, could maintain an action against Otis, the landlord, for personal injuries sustained through the defective condition of the building or appurtenances thereto. 59 Barb. 497; 3 Oregon, 206; 17 Mo. 232; 109 Eng. Com. Law, 220. Otis certainly cannot be charged with negligence in failing to repair, when the defect was latent, unknown to the plaintiff, the occupier of the premises, and who certainly had better means of ascertaining and knowing its existence than Otis could possibly have.

4. Is Otis liable over to his codefendant, the city of Atchison? On this point we submit, that the settled rule of law is, that where the premises are leased out, as in this case, and not in the personal possession and occupation of the landlord, that such liability over does not and cannot exist against the landlord. *Lowell v. Spalding,* 4 Cushing, 277; 14 Gray, 249; 2 Sandf. 301; 12 Ohio St. 92; 9 Allen, 21.

The opinion of the court was delivered by

BREWER, J.: In September 1873, the plaintiff in error, George Jansen, commenced his action against the city of Atchison and A. G. Otis to recover damages in the sum of ten thousand dollars, by reason of personal injuries received Statement of                by the plaintiff on August 10th 1873, through the case.                defects in a sidewalk of one of the public streets of the city of Atchison. Jansen alleged that said injuries were

occasioned by defendants' negligently constructing a sidewalk on Commercial street, and by the said defendants negligently permitting the said defects in said sidewalk to continue; and also, from the defendants negligently permitting an old, defective and dangerous sidewalk to remain and exist. The plaintiff also stated in his petition that the defendant Otis was the owner and possessor of the lot and premises on said Commercial street, in front of which the said defective sidewalk existed at the date of the injuries complained of. The city of Atchison filed its answer, admitting that such city was a city of the second class, and a body corporate and politic, as stated in the petition, but denying the other allegations, statements and averments contained in said petition; and said answer alleged that the damages sustained by the plaintiff were caused by the negligence of the plaintiff and others, for whose carelessness and negligence the city of Atchison was not liable. Otis filed an answer, admitting the ownership of the lot, and alleging that the said premises were at the date of the alleged injury, and for several years prior thereto had been, demised and leased to plaintiff's mother, who, in connection with the plaintiff, at the time of the accident and for a long time prior thereto had been in the occupancy and use thereof as tenants of said Otis, having the personal care, supervision, and entire control of said premises, the buildings thereon, and the appurtenances thereto; that under and by the terms of said lease, said tenants were to keep said premises in good repair at said tenants' expense, and that they received said premises in good repair; and further averring that he (Otis) had no knowledge or information that said sidewalk was unsafe or insecure, and that it was the duty of his codefendant, the city of Atchison, under its corporate powers, to maintain said sidewalk, and that there existed no liability on his part to said plaintiff, and no liability over to said city of Atchison; and that said accident was caused by want of care on the part of the plaintiff, and by negligence and failure of duty on the part of the said city of Atchison. To these answers replies were duly filed, and the case came on for trial. No question

was raised as to the joinder of the parties defendant. Indeed, such joinder seems to have been desired by all, that the one action might dispose of all questions growing out of the injury. After the plaintiff had introduced his testimony each defendant filed a demurrer to the evidence, which was sustained by the court, and judgment rendered in their favor and against the plaintiff for costs.

It is manifest that to sustain this ruling it must appear, either that there was absolutely no liability on the part of the defendants for the injuries sustained by plaintiff — for of the fact of his sustaining injuries there is no question — or, that there was a total failure of proof as to some matter essential to such liability. For if the defendants might under any circumstances be liable for such injuries, and there was testimony tending fairly to establish each fact essential to fix a liability, the party was entitled to a finding as to those facts by the jury, and could not be deprived thereof by an order of the court. The case stands in a different attitude before us from that it would occupy if the jury had passed upon the testimony. Then every conflict in the evidence would be resolved in favor of the result below; now against it.

Counsel for the city has filed an elaborate brief in support of the rulings of the district court, in which he contends — first, that the control and care which a city of the second class in this state exercises over the streets and sidewalks of the city, are by virtue of a power of a govern-

1. Powers and duties of cities, respecting bridges, streets and sidewalks.

mental character, and that it is not liable to the private action of an individual for neglecting to exercise such power, or for its imperfect execution, and therefore that the city cannot be liable in this action; second, that the facts of this particular case do not warrant a recovery in favor of the plaintiff; and third, that if the plaintiff is entitled to recover, such recovery should not be against the city, but against the defendant Otis. The first proposition is one very sweeping in its reach, and if true gives to cities an immunity from responsibility which to most would seem not only novel, but dangerous. To the support of that proposi-

tion counsel devotes the major portion of his brief. He reviews the reasons given by courts and writers for imputing
liability to cities in cases of this nature, and claims that none
of these reasons are sound, and concludes therefrom that a
doctrine has become engrafted upon American law which has
no foundation in correct legal principles, and should therefore
be repudiated. He concedes that this court has hitherto
seemed to follow the line of adverse decisions, but contends
that as no rule of property is involved, but only the construction of powers and liabilities granted and fixed by statute,
the doctrine of *stare decisis* should not outweigh reason, and
that the question should be reëxamined and decided in accordance with correct principles. It may be well to see how far
this question has been before this court, and the various rulings thereon. In the case of the *City of Topeka*
*v. Tuttle*, 5 Kas. 311, the petition alleged that
the city negligently left one of its streets out of
repair, whereby the plaintiff suffered injury; and on an objection that the petition was insufficient, this court held that
it was sufficient. True, no specific objection was pointed
out, but the court decided that a petition stating such and
such facts, and presenting the very question in issue here,
was good. In the case of the *City of Atchison v. King*, 9 Kas.
550, the question was fairly presented, and the court held that
a city was liable for injuries resulting from negligently-constructed sidewalks, and also from defects subsequently arising
and negligently permitted to continue. The same doctrine
was recognized in *City of Ottawa v. Washabaugh*, 11 Kas. 124.
In the case of the *City of Wyandotte v. White*, 13 Kas. 191, a
judgment against the city for injuries sustained through a
defect in a bridge, a part of the public highway, negligently
permitted to continue, was affirmed. In *Smith v. City of
Leavenworth*, 15 Kas. 81, the city was held responsible for
injuries resulting from negligence in leaving open and unprotected an area and cellar-way in the sidewalk. See also the
case of the *City of Leavenworth v. Casey*, McCahon's Rep. 122,
decided by the territorial supreme court, in which the city

*Liability of city for negligence. Cases cited, and rule followed.*

was held responsible for injuries resulting from a negligent construction of a sewer. And in these decisions the court was announcing no new doctrine, but following the almost uniform line of decisions elsewhere. In Dillon on Municipal Corporations, § 789, the law is summed up in these words:

"It may be fairly deduced from the many cases upon the subject, referred to in the notes, that in the absence of an express statute imposing the duty and declaring the liability, municipal corporations proper, having the powers ordinarily conferred upon them respecting bridges, streets and sidewalks within their limits, owe to the public the duty to keep them in a safe condition for use in the usual mode by travelers, and are liable in a civil action for special injuries resulting from neglect to perform this duty."

Among the many cases supporting this proposition may be named, *Weightman v. City of Washington*, 1 Black, 39; *West v. Brockport*, 16 N. Y. 161; *Davenport v. Ruckman*, 37 N. Y. 568; *Norristown v. Moyer*, 67 Penn. St. 355; *R. & W. H. Township v. Moore*, 68 Penn. St. 404. There are many others, but it is unnecessary to burden the records with citations. The supreme court of Michigan by a divided court has ruled the other way. *Detroit v. Blakeby*, 21 Mich. 84.

2. Stare decisis. Settled rules should not be overturned.

We do not care to follow counsel in his discussion of the reasons given by the various courts in support of this doctrine. It may be that those reasons are not altogether satisfactory. Perhaps if it was a new question, we should be compelled to hold them insufficient. But we find a doctrine generally recognized in the courts of other states, generally approved by eminent jurists, hitherto followed by this court, and as it seems to us eminently wise and just; and we are unwilling to abandon it because the reasons given for it may not be wholly satisfactory. We concur in the views expressed by Mr. Justice Cooley in his dissenting opinion in *Detroit v. Blakeby*, from which we quote: "The decisions which are in point are numerous; they have been made in many different jurisdictions, and by many able jurists—and there has been a general concurrence in declaring the law to be in fact what we have already said in point of

sound policy it ought to be. We are asked nevertheless to disregard these decisions, and to establish for this state a rule of law different from that which prevails elsewhere, and different from that which, I think, has been understood and accepted as sound law in this state prior to the present litigation. The reason pressed upon us for such a decision is, not that the decisions referred to are vicious in their results, but that the reasons assigned for them are insufficient, so that, logically, the courts ought to have come to a different conclusion. I doubt if it is a sufficient reason for overturning an established doctrine in the law, when its results are not mischievous, that strict logical reasoning should have led the courts to a different conclusion in the beginning. If it is, we may be called upon to examine the foundation of many rules of the common law which have always passed unquestioned." We adhere then to the rulings heretofore made in this court, as to the liability of a city for injuries resulting from negligence in the care of its sidewalks and streets.

We pass then to the second proposition of the learned counsel for the city; and here he contends that the defect in the sidewalk was a latent defect, and that the city had no notice of its existence or of facts sufficient to put it upon inquiry. If this be true, doubtless the city is not responsible, and if the testimony leaves no question as to its truth there was no error in sustaining the demurrer. This compels some notice of the testimony. The injury happened in this wise: Plaintiff stepped out of the door of a building onto the sidewalk, and as he stepped onto it, it gave way, and he fell through into an area beneath. There was testimony tending to show that this sidewalk was made of cottonwood, and had been built several years; that cottonwood in such a position is liable to decay in a less period than the time this walk had been there; that some of the joists underneath were decayed, and through their rottenness the walk gave way; that shortly before this injury an accident had happened on the walk in front of a near building, and that plaintiff had spoken to the street commis-

*3. Question of fact. Province of jury. Notice of defects.*

sioner of the city about this walk, and requested him to
repair it. It was by ordinance made the duty of the street
commissioner "to thoroughly examine from time to time all
walks, sidewalks, and to see that they are kept in good re-
pair." Now it seems to us, that here was testimony which
ought to have gone to the jury, and that the court erred in
taking the question from them. We do not mean to intimate
that a jury ought to find from this testimony that sufficient
notice existed to charge negligence upon the city, but simply
that here was *a question of fact* which it was for them, and
not the court, to pass upon. And in order to guard against
4. Notice to city any misconception, we desire to emphasize the
of defect in
sidewalk.     fact, that before the jury may find negligence
they must be satisfied that the city had notice of the defect,
or had knowledge of facts sufficient to put it upon inquiry
long enough before the injury to have repaired the walk.
Negligence implies some omission of duty. The city must
have been in fault. And if it had no knowledge of any defect,
or of any facts from which it might reasonably have presumed
that there was a defect, it is not to blame, and cannot be said
to have been guilty of negligence. On the other hand, though
the rottenness of the stringers was not apparent, the circum-
stances might have been such that a man of ordinary prudence
would have expected to find decay, and ought to have made
examination. In *R. & W. H. Township v. Moore*, 68 Penn.
St. 404, the defect was in a bridge whose timbers had decayed.
The decay was not apparent to a mere outside inspection, but
inasmuch as the timbers had stood for such a length of
time under such surroundings as would ordinarily produce
decay, the court properly held that a failure to make a critical
examination was some evidence of negligence. See also, *Weis-
enberg v. City of Appleton*, 26 Wis. 56; *City of Ripon v. Rittle*,
30 Wis. 614; *Mersey Docks v. Gibbs*, 11 H. L. Cases, 687.
In this last case the House of Lords held, "that having the
means of knowledge, and negligently remaining ignorant, is
equivalent in creating a liability to actual knowledge."

As to the third proposition of counsel, it seems to us that

the city is liable, whether it have a cause of action over against its codefendant, or not. The fee of the street is not in the lot-owner, but in the county. *Comm'rs Franklin Co.* 5. Lot-owner; *v. Lathrop*, 9 Kas. 453; *A. & N. Rld. Co. v. Gar-* generally not liable. *side*, 10 Kas. 552. The control of the street is in the city. The lot-owner has no right to occupy the sidewalk with any improvement, nor to excavate beneath it for any area, or passage-way. (*Smith v. City of Leavenworth*, 15 Kas. 81.) If the city permits a lot-owner to occupy the sidewalk, or obstruct the free passage over it, or endanger its safety by excavations beneath it, it does not thereby relieve itself from responsibility. It is, as to third parties, the same as though it had done these things itself. In other words, it cannot transfer to private citizens that responsibility which, for wise purposes of public policy, the law casts upon it, in reference to the care and safety of its streets and walks. Was the demurrer of the defendant Otis properly sustained? We think it was. The only allegation in the petition pointing toward him was, that he was the owner of the lot and building in front of which the injury occurred. There was no allegation or intimation that the defect in the sidewalk resulted from any negligence or omission on his part. Negligence was charged upon the city, not upon him. So that, unless a lot-owner is responsible for all injuries resulting from a defective sidewalk in front of his lot, the petition stated no cause of action against him. Nor is there anything in the answer of the city of Atchison which discloses a cause of action against him. That simply admits that the city of Atchison is a city of the second class, denies all other allegations of the petition, and alleges that the injury complained of was caused by the negligence of plaintiff and others for whose negligence the city was not responsible. The answer of Otis does not make good the omissions of the other pleadings, nor state any facts tending to show a liability on his part. But passing beyond the pleadings, we do not think the testimony disclosed any liability on his part. It appears that the sidewalk, at the

7. Area under sidewalk; presumption. place of accident, was some twelve-and-a-half feet in width; that four or five feet from the building was an area wall. A part of the walk reaching from the curbstone to this wall rested on the ground. The balance on stringers let into the house on the one end, and resting at the other on the wall. This walk over the area was the part that broke. The area was partially filled with dirt, shavings, etc., and (according to the only testimony given thereon) was not and indeed could not be used for any purpose in connection with the building. It did not, according to the plaintiff himself, furnish air to the basement or cellar. Whether it furnished light or not, is not stated; and whether the front of the cellar or basement was walled or boarded up tight, does not appear. There is no testimony tending to show when this wall was built; by whom, or for what purpose. For aught that the testimony discloses, it may have been built there by the city to protect the dirt of the street from washing away, or as a support to the sidewalk, or for any other conceivable purpose. Now, ordinarily an area is supposed to be for the benefit of the adjoining building, for light, air, approach, or storing; and there may be a presumption that it was constructed by the owner, or at his instance, or for his benefit. But when, as in this case, the testimony shows that it was not for the benefit of the building, that it was not for air, approach, or storing, was not and could not be used for any purpose in connection with the building, it does away with any presumption that it was constructed by the owner, or that he is responsible for injuries resulting from it. He has not the fee of the street or sidewalk. He is not to be presumed to be trespassing upon the property of the public. The city has the possession and control of street and walk. Any work done above or below the surface, is presumptively done by it; and for any injury resulting from any obstruction or excavation, it is responsible; and it has a claim over against an individual only when it appears that such obstruction or excavation was made by the individual, or at his instance, or for his benefit. The liability of the individ-

ual is no greater because the injury took place on the sidewalk, than if it happened in the middle of the street, or from falling into a sewer rather than into an area. The only principle upon which the individual can be held responsible is, that the individual caused the injury — not that he owns a lot in front of which the injury was done. So far as the mere fact of a defect in the sidewalk is concerned, neither statute nor ordinance attempted to cast upon the lot-owner the duty of making or repairing sidewalks. An ordinance had been in force requiring lot-owners to keep the sidewalks in front of their lots in repair, but this had been repealed some two months prior to the injury. The only provisions in force authorized the city to make or repair, and to collect the cost thereof from the lots. There is, outside of positive law, no natural obligation on the part of a lot-owner to keep the street or sidewalk in front of his lot in good repair, and no liability for injuries resulting from a failure to do so. Hence, when the city has assumed the entire control of the matter, a failure to repair the sidewalk may be negligence on its part, but is not on the part of the lot-owner who has been ousted from all control. We think therefore, upon the testimony in this case, the demurrer of the defendant Otis was properly sustained. It is unnecessary to inquire what effect the fact that the step-mother of plaintiff, whose clerk and business manager he was, was the lessee of the building with a covenant in the lease to keep the premises in repair, would have upon the liability of Mr. Otis, if it appeared that he had constructed the area, or that it had been done at his instance or for his benefit.

*8. Negligence of city.*

The case therefore will be sent back with instructions to reverse the judgment in favor of the city, and grant a new trial; but the judgment in favor of defendant Otis will be affirmed. The costs in this court will be divided between the plaintiff in error and the city of Atchison.

All the Justices concurring.